# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE AUTOMOBILE MECHANICS' LOCAL NO. 701 UNION AND INDUSTRY PENSION FUND,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN MORONI, an individual, d/b/a WESTGATE AUTO SALES, INC., d/b/a WEST GATE AUTO SALES; SUSAN MORONI, an individual; and MORONI AUTO SALES, INC., an Illinois Corporation, d/b/a WESTGATE AUTO SALES, INC., d/b/a WEST GATE AUTO SALES,<br><br>    Defendants. | Case No. 12 C 4783<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss by Defendants John Moroni ("Moroni") and Moroni Auto Sales, Inc. ("Moroni Auto"). For the reasons stated herein, the Motion is granted in part and denied in part.

### I. BACKGROUND

All facts are taken from allegations in Plaintiff's Complaint unless otherwise indicated. Plaintiff Board of Trustees of the Automobile Mechanics' Local No. 701 Union and Industry Pension Fund ("The Fund") received a default judgment on

December 7, 2010 against Elmhurst Lincoln Mercury, Inc. ("ELM") in the amount of $1,086,330.60. The Honorable Blanche M. Manning issued the judgment. The amount represents ELM's withdrawal liability owed to The Fund after ELM stopped contributing to it in 2009. The Fund is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, which gives this Court jurisdiction.

Plaintiff alleges that ELM was 90 percent owned by the David G. Mears Trust, whose beneficial owners were, in turn, Susan Moroni ("Susan") (56 percent of the trust) and John Moroni (44 percent of the trust). David G. Mears owned 10 percent of ELM stock. Susan is also a Defendant in this action and a default judgment has already been entered against her.

Plaintiff alleges that in the fall of 2009, Moroni began operating a sole proprietorship under the assumed names of West Gate Auto Sales and Westgate Auto Sales Inc. (the "Moroni Sole Proprietorship"). Later, on December 11, 2009, Moroni incorporated the business under the name Moroni Auto Sales, Inc. ("Moroni Auto") with Moroni as its sole shareholder. Moroni Auto continues to use the Westgate assumed names. Plaintiff's Complaint is a bit unclear as to the shift between the Moroni Sole Proprietorship and Moroni Auto (it uses John Moroni's name interchangeably with the sole proprietorship), but it nonetheless reasonably alleges that both the Moroni Sole Proprietorship and

the later incorporated Moroni Auto are under common control with ELM and therefore ELM, the Moroni Sole Proprietorship (and thus Moroni himself) and Moroni Auto are a single employer under 29 U.S.C. § 1301(b)(1).

ELM was insolvent as of January 1, 2009 and Moroni and Susan were both officers in ELM. In late 2009, Moroni and Susan began diverting assets to the Moroni Sole Proprietorship, Moroni Auto and themselves without first satisfying ELM's corporate obligations. The Moroni Sole Proprietorship, Moroni Auto and ELM share common employees, tools, inventory, vehicles, equipment, customer lists and corporate records. The Moroni Sole Proprietorship and Moroni Auto have collected accounts due to ELM. The Moroni Sole Proprietorship, ELM and Moroni Auto have commingled assets and Plaintiff alleges the Moroni Sole Proprietorship, Moroni Auto and ELM are alter-egos of one another. Moroni Auto is merely a disguised continuance of ELM and the Moroni Sole Proprietorship, Plaintiff alleges. Plaintiff brings this three-count Complaint alleging (1) joint and several single employer liability under 29 U.S.C. § 1301(b)(1),(2) shareholder and director liability under the Illinois Business Corporation Act, 805 Ill. Comp. Stat. 5/8.65(a)(1) and 9.10(C) and (3) common law successor and alter ego liability.

Defendants seek dismissal under several theories arguing Plaintiff (1) is barred by *res judicata* from maintaining this

suit, (2) is barred by collateral estoppel, (3) has not stated a claim for which relief can be granted (FED. R. CIV. P. 12(b)(6)), (4) has not alleged sufficient facts to pierce the corporate veil, and (5) has failed to allege facts sufficient to state a claim that Moroni was a director of ELM.

## II. **LEGAL STANDARD**

When evaluating dismissal under Rule 12(b)(6), the Court takes all well-pleaded allegations of the complaint as true and views them in the light most favorable to the plaintiff. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, ---, 2012 U.S. App. LEXIS 4834, at *29 (7th Cir. 2012).

A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at *30. Determining whether a complaint states, a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. *Ashcroft v. Iqbal*, 556 U.S. 662, 663-664 (2009).

## III. **ANALYSIS**

### A. *Res Judicata* and Collateral Estoppel

*Res Judicata* requires three elements to prohibit a subsequent legal action: (1) identity of the parties or their privies; (2) an identity of the cause of action; and (3) a final

judgment on the merits. *Matrix IV, Inc. v. American Nat. Bank and Trust Co. of Chicago*, 649 F.3d 539, 547 (7th Cir. 2011). Defendants here argue that Plaintiff's own allegations states that Defendants in this case are in privity with the defendants in the underlying judgment.

Virtually the identical situation and argument were presented in *Central States, Southeast and Southwest Areas Pension Fund*, *et al. v. Hayes, et al.*, 789 F.Supp. 1430 (N.D. Ill. 1992). In that case, the Lincoln Transfer Company incurred withdrawal liability and subsequently went bankrupt. Central States obtained a consent judgment from two companies in the Lincoln-controlled group, but those companies did not pay as promised, so plaintiffs initiated a new suit against another member of the Lincoln-controlled group, Chicago Heights Leasing. Chicago Heights argued *res judicata* and collateral estoppel barred the action because Chicago Heights had not been named in the suit against the other two Lincoln controlled companies. Judge John F. Grady properly scoffed at the defendants' arguments.

> Even if CHL. was in privity with Lincoln at the time of the latter's withdrawal from the Fund, so that *res judicata* were applicable to the present claim, the court fails to see how the doctrine would aid CHL. [the defendant]; if anything, the doctrine would preclude the court from relitigating the question of CHL.'S liability, and this action would be reduced to a matter of enforcing the judgment obtained by the Fund in the

> earlier against CHL.'S privies. . . . Because *res judicata* would not help CHL . . . it is jointly liable for the controlled group's assessment if, on the merits of the present action, it is in fact a member."

*Hayes*, 789 F.Supp. at 1433 (internal citations omitted). In a footnote, Judge Grady found the same logic applied to the collateral estoppel issue. *Id*. at 1434 n.4. The *Hayes* court went on to articulate that the new suit was not precluded because it involved a different *issue*: whether the new defendants were part of the debtor's controlled group and thus liable for the debtor's withdrawal assessment. Judge Grady noted "[a]s a creditor, the Fund [plaintiff] is not required to sue all of the controlled group members in one action or lose its rights against uncoiled parties; it may even sue each member separately if it elects to." *Id*. at 1434.

The same is true here, and thus Defendants' motion to dismiss on *res judicata* and collateral estoppel grounds fails.

### B. Failure to State a Claim Upon Which Relief Cans Be Granted (12(b)(6))

Defendants argue that Plaintiff has not alleged sufficient facts to support its causes of action.

#### *1. ERISA Single Employer Liability*

Two criteria must be met in order to impose an insolvent organization's liability upon another organization: (1) the solvent organization must be under "common control" with the

insolvent organization, and (2) it must be a "trade or business." *Cent. States, S.E. and S.W. Areas Pension Fun v. King Auto Fin., Inc.*, No. 12-617, 2012 U.S. Dist. LEXIS 140688, at *7 (N.D. Ill. Sept. 19, 2012). Common control can be demonstrated in several ways, but the Court focuses here on whether the Moroni Sole Proprietorship, Moroni Auto and ELM are "brother-sister" groups. A brother-sister group is one in which (1) "five or fewer persons who are individuals, estates, or trusts" own a controlling interest (at least 80 percent of the stock) in two or more organizations and (2) the same persons maintain "effective control" (at least 50 percent of the stock) over each organization. *Cent. States v. SCOFBP, LLC*, 738 F.Supp.2d 840, 846 (N.D. Ill. 2010) (citing 26 C.F.R. § 1.414(c)-2).

Plaintiff has alleged Moroni and his spouse owned, through a trust, 90 percent of ELM. Under ERISA regulations, as the holder of a beneficiary interest of more than 5 percent of the trust, Moroni is attributed ownership of essentially the entirety of the trust. *Id.* Plaintiff alleges Moroni is 100 percent owner of both the Moroni Sole Proprietorship and Moroni Auto. Thus, under the allegations of the Complaint, Moroni holds both a controlling interest and effective control over ELM, the Moroni Sole Proprietorship and Moroni Auto.

Defendants argue in an affidavit that Moroni is not the sole owner of Moroni Auto but rather is only a 50 percent stockholder.

While the Court may sometimes take notice of publicly filed documents, such as incorporation papers, Moroni's affidavit does not fall into this category and would embroil the Court in an issue of fact at the motion to dismiss stage, which is improper. Thus, the Court disregards Moroni's affidavit. Under the allegations of the Complaint, a cause of action has been stated against Moroni Auto for single employer liability. Moroni is properly a defendant as well, because ERISA regulations treat an individual who owns the entire interest in an unincorporated trade or business (in this case the Moroni Sole Proprietorship) as his own employer. 29 C.F.R. 4001.3(a)(3).

## 2. Shareholder and Director Liability under the Illinois Business Corporation Act

Plaintiff alleges liability under Sections 8.65(a)(1) and 9.10(c) of the Illinois Business Corporation Act ("BCA"). The latter section prohibits distributions under certain circumstances and the former section imposes liability upon directors who authorize such distributions.

Defendants object that Plaintiff has failed to allege that Moroni was a director of ELM. This is true; Plaintiff alleged Moroni was an officer and shareholder of ELM. Plaintiff responds that courts have interpreted the statute to apply to officers as well. Plaintiff cites *Chicago Tile Institute Welfare Plan et al. v. Tile Surfaces, Inc. et al.*, No. 04-4194, 2004 U.S. Dist. LEXIS

21612 (N.D. Ill. Oct. 26, 2004). That case states in a footnote that Illinois courts have interpreted "that section" as applying to corporate officers. *Id*. at *4 n.1. The case cites *Chicago Title & Trust Co. v. Brooklyn Bagel Boys, Inc.*, 584 N.E.2d 142, 146 (Ill. App. Ct. 1992), and describes *Brooklyn Bagel Boys* as holding a "secretary-treasurer of a corporation liable for debts incurred during its dissolution pursuant to section 8.65(a)(3)." *Id.*

The Court has several problems with Plaintiff's extrapolation of this one citation. First, it is not clear that the *Tile Surfaces* court's reference to "that section" was meant to encompass subsection 8.65(a)(1). In fact, by specifically referencing "section 8.65(a)(3)" the Court believes the *Tile Surfaces* court was, at best, referencing only subsection 8.65(a)(3), which refers to actions taken after dissolution, which is not the issue in this case. (There is no allegation ELM was dissolved during the relevant time period.) Moreover, this Court respectfully disagrees with the *Tile Surfaces* court's interpretation of the underlying state court case, *Brooklyn Bagel Boys.*

In *Brooklyn Bagel Boys*, individual liability was found against the secretary-treasurer, but the case notes specifically that "[t]he court also dismissed the complaints against Gorbena

- 9 -

[the secretary-treasurer] . . . in [his] capacity as [a] corporate *officer*[]. However, the trial court denied the motion to dismiss claims against Gorbena . . . in his capacity[y] as [a] corporate *director*[]." *Brooklyn Bagel Boys*, 584 N.E.2d at 144 (emphasis added). Thus, the Court does not find that *Brooklyn Bagel Boys* stands for officer liability, as the case against Gorbena as an officer was dismissed.

Moreover, *Brooklyn Bagel Boys* made its ruling of individual liability in the context of not only subsection 8.65(a)(3) but also subsection 12.45(d), which deals with the constructive continuation of a corporation without interruption after it reinstates its existence after a dissolution. *Id*. at 146. In *Brooklyn Bagel Boys*, liability was incurred during the period when the corporation was dissolved, and the Court merely ruled that subsection 12.45(d) did not operate to negate individual liability incurred during the period when the corporation was dissolved. *Accord Gonnella Baking Co. v. Clara's Pasta Di Casa, Ltd.*, 786 N.E.2d 1058, 1062 (Ill. App. Ct. 2003) (finding officer liability during a period of dissolution). Plaintiff cites no other case law that interprets Section 8.65(a)(3) as applicable to officers (let alone Section 8.65(a)(1)), and the Court can find none. In fact, Chief Judge James Holderman ruled explicitly that 8.65(a)(3) did not apply to officers. *Laborers' Pension*

*Fund v. Nationwide Envtl.*, No. 11-500, 2011 U.S. Dist. LEXIS 27727, at *4 (N.D. Ill. March 16, 2011) ("As a general matter, the Business Corporation Act distinguishes between 'directors' and 'officers.' . . . Because, by its plain language, Section 8.65(a)(3) applies only to 'directors,' this statutory provision cannot support Plaintiff's cause of action."). This Court likewise finds that the plain language of Section 8.65(a)(1) applies only to directors, not officers. Therefore, Count II is dismissed.

### *3. Successor and Alter Ego Liability*

Successor liability is a common law theory. It is gauged by a modified test when nonpayment of ERISA benefits are involved. *Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 674 (7th Cir. 2011).

> [W]hen a claim arising from a violation of federal rights is involved, the courts allow the plaintiff to go against the purchaser of the violator's business even if it is a true sale . . . , provided that two conditions are satisfied. The first is that the successor had notice of the claim before the acquisition. . . . The second condition is that there be substantial continuity in the operation of the business before and after the sale, and is satisfied if no major changes are made in that operation.

*Id.* (ellipses in original).

Here, Plaintiff alleges there was a substantial transfer of assets from ELM to the Moroni Sole Proprietorship and Moroni Auto and that there was notice (via Moroni, the alleged *de facto* owner

of all entities). Plaintiff has alleged there were no major changes of operation through its allegations that the same customer lists, customers, equipment and employees were used. Thus, successor liability is sufficiently pled.

Alter ego liability occurs when there is "such unity of interests and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Cent. Ill. Carpenters Health & Welfare Trust Fund, et al. v. Struben et al.*, 2009 U.S. Dist. LEXIS 14234, at *43-44 (C.D. Ill.) (Feb. 24, 2009) (citing *Lumpkin v. Envirodyne Indus.*, 933 F.2d 449, 463-464 (7th Cir. 1996)). Unity of interest and ownership may be shown by evidence of several factors, with no single one being determinative. Those factors include: misrepresentation; commingling of funds, assets, or identities; inadequate capitalization; failure to operate at arms' length; failure to comply with corporate formalities; failure to issue stock; non-payment of dividends; insolvency of the corporation; non-functioning of other officers or directors; absence of corporate records; diversion of assets by or to a shareholder to the detriment of creditors; failure to maintain arm's length relationships among related entities; and whether in fact the

corporation is a mere facade for the operation of the dominant shareholders. *Struben*, 2009 U.S. Dist. LEXIS 14234, at \*44-45.

"The Seventh Circuit has cited with approval three general factors … in determining whether underlying objectives of the alter ego doctrine have been satisfied: (1) the amount of respect which the shareholders give to the separate entity; (2) the fraudulent intent involved; and (3) the amount of injustice which parties would suffer by respecting the corporate entity." *Struben*, 2009 U.S. Dist. LEXIS 14234, at \*45 (citing *Lumpkin*, 933 F.2d at 461).

Here, several unity of interest factors are alleged, such as insolvency, commingling of assets, diversion of assets to a shareholder to the detriment of creditors, failure to maintain arms' length relationship among related entities (by diverting assets and resources from ELM to the Moroni Sole Proprietorship and Moroni Auto) and that both the Moroni Auto is a mere facade for Moroni. Furthermore, all three general factors are also alleged. Plaintiff has alleged Moroni failed to give respect to formalities of the separate entity, that the new companies were established to permit ELM "to escape its contractual and financial obligations to the Plaintiff," (Compl. 8) and that recognizing the corporate entity would result in an injustice and fraud (deprivation of ERISA payments). This is sufficient to survive a motion to dismiss.

Defendants protest that Plaintiff has not laid out who, where, when and how these diversions and commingling occurred. But that level of specificity is the standard of pleading required for fraud (F℮ᴅ. R. Cɪᴠ. P. 9(b)), and Defendants offer no case law showing that level applies in this case. None of the previously cited cases by this Court have required fact-based pleading; this Court will not require it either. The Motion to Dismiss Count III is denied.

## IV. CONCLUSION

For the reasons stated herein, Count II of Plaintiff's Complaint is dismissed. Defendants' Motion to Dismiss Counts I and III is denied. Defendants must answer the remaining counts within twenty-one (21) days of entry of this order.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　　
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 10/25/2012